# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:04-CV-139-RJC-DCK

| | |
|---|---|
| RICHARD MASON, | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| | ) **AND ORDER** |
| ILS TECHNOLOGIES, LLC, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion To Limit Deposition And For Sanctions" (Document No. 53), filed January 25, 2008; "ILS Technology, LLC's Brief In Opposition To Plaintiff's Motion To Limit Deposition And For Sanctions" (Document No. 55), filed February 11, 2008; and "Plaintiff's Reply Memorandum In Support Of His Motion To Limit Deposition And For Sanctions" (Document No. 63), filed February 22, 2008. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition.

Having carefully considered the arguments, the record, and the applicable authority, the undersigned will order that the motion to limit deposition be <u>granted</u> and will respectfully recommend that the motion for sanctions be <u>denied</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit involves a contract dispute between Richard Mason ("Plaintiff") and his former employer, ILS Technology, LLC, ("Defendant"). Plaintiff filed his Complaint (Document No. 1-2) in this action in Mecklenburg County Superior Court on February 24, 2004. On March 29, 2004, Defendant filed its "Notice of Removal" (Document No. 1) to this Court.

The original discovery deadline in this case was February 15, 2005, and the original motions deadline was March 15, 2005. (Document No. 4). The parties filed for extensions, and then in June 2005, filed cross motions for summary judgment. (Document Nos. 5, 6, 9, 11). After numerous extensions and multiple judicial reassignments, the Honorable Chief Judge Robert J. Conrad, Jr. ruled on the motions for summary judgment on April 11, 2007. (Document No. 33). Judge Conrad determined that Defendant's motion should be denied, and that Plaintiff's motion should be granted in part, thereby reserving the issues related to deferred compensation and liquidated damages for trial.

On October 1, 2007, Judge Conrad entered a new "Pretrial Order And Case Management Plan" (Document No. 35) that set a deadline for discovery completion of December 31, 2007 and scheduled trial for March 17, 2008. The discovery deadline has since been extended twice, most recently to February 20, 2008. (Document No. 49). On January 25, 2008, Plaintiff filed the pending motion requesting that the deposition of Mr. Lee Rimler, former counsel to Plaintiff, be limited and that sanctions be granted against Defendant. (Document No. 53).

## II. DISCUSSION

### A. Attorney-Client Privilege

According to Plaintiff, on January 11, 2008, Defendant first produced documents obtained from Defendant's server and a hard drive of a computer previously used by Plaintiff. The documents at issue included communications between Plaintiff and his then counsel, Lee Rimler. Plaintiff contends that Defendant was promptly notified that Plaintiff considered these documents privileged. On January 16, 2008, the parties proceeded with a previously scheduled deposition of Mr. Rimler. At that deposition, Mr. Rimler was instructed by both his own counsel and counsel for the Plaintiff

not to answer certain questions on the basis of attorney-client privilege. At some point, Plaintiff's counsel suspended the deposition to seek an order from the Court to limit the deposition to preclude Defendant from inquiring about privileged materials. On January 25, 2008, "Plaintiff's Motion To Limit Deposition And For Sanctions" (Document No. 53) was filed.

The burden is on the proponent of privilege to "establish not only that an attorney-client relationship existed, but also that particular communications at issue are privileged and that the privilege was not waived." Deel v. Bank of America, N.A., 227 F.R.D. 456, 458 (4th Cir. 2005) (quoting In re Grand Jury Subpoena, 341 F.3d 331, 336 (4th Cir. 2003)).

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981) (internal citation omitted).

Although attorney-client privilege is integral to our system of justice, because attorney-client privilege "'impedes [the] full and free discovery of truth,'" it "is to be narrowly construed and recognized 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998) (citations omitted).

The Fourth Circuit applies the following "classic test" of attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the

> attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In Re Grand Jury Subpoena, 341 F.3d at 335 (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).

Applying the Fourth Circuit's test, the undersigned finds that the deposition testimony of Lee Rimler should be limited based on attorney-client privilege. It appears clear from the facts presented by both parties that Plaintiff sought to become a client of Mr. Rimler; that Mr. Rimler is a member of the bar; that the communications in dispute related to a fact of which Mr. Rimler was informed by his client, without the presence of strangers, for purposes of securing either an opinion on law or legal services, and not for the purpose of committing a crime; and that the privilege has been claimed and not waived. The only close question here is whether or not the privilege was waived.

Defendant contends that "attorney-client privilege cannot protect the communications sent and received by [Plaintiff] from his work computer with his personal attorney, because these communications were not made in confidence." (Document No. 55 at 1). Defendant concludes that if there was privilege, it was waived. Id. Defendant bases its position on the Park-Ohio Technology Policy[1] which provides in part:

> Park-Ohio Industries, Inc., and its' subsidiaries electronic mail ("E-mail"), computer and telephone systems are intended solely to facilitate the efficient transmittal of business-related information ... The Company reserves the right to view or print any E-mail communication or computerized documents at any time, regardless of subject, author, or intended recipient and will monitor E-mail

---

[1] ILS Tech is a wholly-owned subsidiary of Park-Ohio Holdings Corp. ("Park-Ohio").

> communications and computerized documents on a regular basis to ensure that the system is used in accordance with its intended business purpose ... Therefore, employees have no expectation of privacy in regard to E-mail communications and/or computerized documents.

Defendant has provided the affidavit of Shelley C. Elkins, a Senior HR specialist for Park-Ohio, which states that Ms. Elkins provided ILS Tech's designated HR point person, Wendy Wussow, a copy of the Park-Ohio Corporate Policies and Procedures Manual, which includes the Technology Policy as one of 29 policies in the manual. (Document No.58). Defendant also attached an affidavit from Ms. Wussow which provides in its most pertinent part that she "was aware that there were ILS Tech policies in place providing that e-mail was intended for business purposes only and that ILS Tech reserved the right to review all e-mail sent over company systems." (Document No. 59). Neither affidavit suggests any knowledge on the part of Plaintiff regarding e-mail policies. In fact, in the deposition transcript of Ms. Wussow, as later provided by Plaintiff, Ms. Wussow acknowledges that she does not remember any instruction to enforce an email policy similar to the one at IBM, nor did she recall discussing email policy with Plaintiff. (Document No.63-2 at 3 and 5).

Plaintiff signed an affidavit on January 23, 2008 that provided in pertinent part:

> 5. To the best of my knowledge and recollection, ILS had no policy concerning personal use of computers and did not alert me that my personal emails would be subject to a search or review by others at ILS.
>
> 6. I had an expectation that my personal emails, and in particular those to and from my lawyer, would be confidential unless I affirmatively disclosed them to ILS by forwarding a copy.

(Document No. 51-9).

Defendant's main arguments against a finding of attorney-client privilege are that: (1) all

5

documents at issue fail to meet each of the elements of privilege (although Defendant does not explain which elements are not met); (2) that Plaintiff's communications with his attorney were not confidential and therefore cannot be privileged; and (3) that Plaintiff cannot create confidentiality by claiming he was unaware of ILS Technology's company email policy – particularly as president of the company.

The undersigned disagrees with Defendant's analysis. First, the elements Defendant refers to come from Brown v. American Partners Federal Credit Union, 645 S.E.2d 117, 121 (N.C. App. 2007) and are essentially the same as the "classic test" outlined by the Fourth Circuit. The only close call in either test is whether the client has waived privilege. Defendant's next arguments seek to undermine Plaintiff's claim of privilege by questioning the confidentiality of the communications. Based on the briefing by both parties, it appears that the communications between Plaintiff and Mr. Rimler were indeed confidential, at least until they were very recently uncovered, and that Plaintiff expected them to be, and to remain, confidential.

Defendant argues that Plaintiff cannot create confidentiality by claiming he was unaware of the email policy. The relevant affidavits cited above establish that Park-Ohio had a restrictive email policy that it intended to convey to the employees of its subsidiaries, including ILS Technology. However, the affidavits fail to show that Defendant effectively conveyed that policy since they indicate that Plaintiff had no knowledge of the Park-Ohio email policy and raise doubt as to whether even the designated ILS email administrator was aware of the policy. If Plaintiff lacked knowledge of the email policy, and Defendant cannot show that Plaintiff was notified of that policy, then Plaintiff had a reasonable expectation of privacy and confidentiality in his email communications with his personal attorney. See United States v. Simons, 206 F.3d 392, 398-99 (4th Cir. 2000); see

6

also, In Re Asia Global Crossing, Ltd., 322 B.R. 247, 255-57 (Bkrtcy S.D.N.Y. 2005).

The Court will not conclude that Plaintiff, pursuant to the "classic test" articulated by the Fourth Circuit, waived privileged communication with his personal attorney because he arguably *should have* known about a specific company email policy. The cases cited in support of Defendant's position are distinguishable from the instant facts in that (1) they do not relate to attorney-client privilege, and/or (2) there is no dispute that the employer had a clear and published policy in place. For example, in Kaufman v. SunGard, "Kaufman knowingly utilized SunGard's network with the knowledge that company policy provided that SunGard could search and monitor email communications at any time ...[i]t is not in dispute that Kaufman agreed to abide by SunGard company policy." Kaufman v. SunGard, No. 05-cv-1235, 2006 WL 1307882 at *4 (D.N.J. 2006). In the instant case, it is hotly disputed whether Plaintiff was even aware of the policy, and no one alleges he agreed to abide by it.

Plaintiff's Reply concedes that "[a]n employee's subjective lack of knowledge may not be enough to maintain privilege where the employer has an email policy in place and has effectively published it to its employees so as to put them on notice of the lack of privacy of those emails." (Document No. 63 at 4). However, Plaintiff aptly distinguishes the instant case, arguing "Defendant's evidence as set forth above falls short of showing that such policy was effectively conveyed to the employees, including Mr. Mason." Id. A more convincing showing of an effective notification of the Park-Ohio email policy to Plaintiff, or some affirmative evidence of Plaintiff's waiver of privilege, should be required before this Court allows private attorney-client communications to be subject to discovery.

The undersigned is satisfied that Plaintiff has met his burden of establishing an attorney-

7

client relationship with Mr. Rimler and that the communications addressed in the underlying motion are privileged and that the privilege was not waived. Based on the standard set forth by the Fourth Circuit and the reasoning presented in the Plaintiff's briefs, the undersigned will order that the communications asserted by Plaintiff in the "Amended Privilege Log Exhibit 12" (Document No. 54-2) are subject to attorney-client privilege and that the contents thereof should be sealed in this matter and should not be subject to deposition inquiries in this case.

**B. Sanctions**

Plaintiff's pending motion also seeks sanctions against Defendant pursuant to Fed.R.Civ.P. 37 for the allegedly untimely production of the privileged communications that form the subject of this dispute, and for conduct at the deposition of Mr. Rimler. While the very late production of certain documents by Defendant is regrettable, and at least in hindsight seems avoidable, the undersigned will not recommend sanctions. Considering the overall history of this case, including numerous changes in both attorneys and judicial officers, the undersigned does not find sanctions are justified. Furthermore, although review of the deposition transcript indicates that counsel for the parties engaged in contentious exchanges on the issue of privilege, the undersigned does not find justification for sanctions.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that the motion to limit deposition testimony is **GRANTED** and that the communications outlined in Plaintiff's "Amended Privilege Log Exhibit 12" (Document No. 54-2) shall be sealed and not subject to deposition inquiry, and shall be returned to Plaintiff.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the motion for sanctions be **DENIED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO ORDERED AND RECOMMENDED**.

Signed: February 29, 2008

David C. Keesler
United States Magistrate Judge